**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 23-42153-nhl |
| ALEX ANTZOULATOS, | |
| Debtor. | Chapter 7 |
| EQUAL ACCESS JUSTICE FUND LP, | Adv. Pro. No. |
| Plaintiff, | |
| v. | |
| ALEX ANTZOULATOS, | |
| Defendant. | |

## CREDITOR EQUAL ACCESS JUSTICE FUND'S COMPLAINT FOR DETERMINATION THAT DEBT IS NON-DISCHARGEABLE

Creditor Equal Access Justice Fund LP ("Plaintiff" or "EAJF") files this Complaint for Determination that Debt is Non-Dischargeable regarding the debts owed by Alex Antzoulatos ("Antzoulatos") to Plaintiff and would show the Court as follows:

**I.**
**Jurisdiction**

1.      Debtor filed his Voluntary Petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code on June 20, 2023 (the "Petition").  Debtor's bankruptcy case, Case No. 1-23-42153-nhl, is pending before the United States Bankruptcy Court for the Eastern District of New York.

2.      This is an adversary proceeding in which Plaintiff is seeking a determination that the debt owed by Debtor to Plaintiff is not dischargeable under sections 523(a)(2), (4), and (6) of

the Bankruptcy Code. This complaint is filed within the extended deadline for the filing of such complaints as set in the bankruptcy case.

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157 and the claims in this adversary proceeding arise under 11 U.S.C. § 523. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      Plaintiff consents to the entry of a final order by this Court.

## II.
## Parties

5.      Plaintiff Equal Access Justice Fund is a Delaware limited partnership. Its address is Equal Access Justice Fund LP, c/o Delaware Trust Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

6.      Antzoulatos is an individual who resides in the State of New York and may be served with process by United States Mail to his residence, 31-28 28th Rd. Apt 2, Astoria, NY 11102, or wherever he may be found.

## III.
## Factual Background

7.      EAJF is in the business of lending money to lawyers and law firms.

8.      Antzoulatos is a former solo practitioner attorney in Queens County, New York.

9.      On September 26, 2018, EAJF and Antzoulatos entered into a Loan Agreement ("Agreement") wherein EAJF loaned $500,000 ("Original Loan") to Antzoulatos.

10.     Section 5.3 of the Agreement states "The Borrower shall use the proceeds of the Loans to fund Expenses, including the full payment and satisfaction of any loan on the Collateral or other loan, and pay any fees due to the Lender on the Closing Date under this Agreement, and not for any other purpose (including for personal, household or family purposes). For further

2

clarity, the proceeds of the Loans will be used for a ***commercial purpose and only for law firm purposes of the Borrower***.” (emphasis added)

11.     Among other instruments, Antzoulatos executed a promissory note (“Original Note”) for the $500,000.00 principal, additional accrued interest, and any fees to evidence his indebtedness to EAJF.

12.     “Obligations” are defined in Agreement Section 1.1 to include the principal and interest on the Original Loan, all fees and charges, and all other payment obligations—all of which are owed by Antzoulatos to EAJF.

13.     On October 2, 2018, shortly after receiving his $500,000 loan from EAJF, unbeknownst to EAJF, Antzoulatos purchased the real property located at 25-55 48th Street, Astoria, Queens County, New York 11103 (hereafter the “Property”).

14.     On September 26, 2019, the first yearly anniversary of the Original Loan, accrued interest to that date of $111,527.79 was added to the existing principal balance of $500,000 for a total new capitalized principal balance of $611,527.79, as Antzoulatos never once made payment to EAJF.

15.     In Section 3.1(c) of the Agreement, on each yearly anniversary of the Agreement, Antzoulatos owes EAJF a “Servicing Fee” consisting of 1% of the newly capitalized principal balance.

16.     In Section 3.1(b) of the Agreement, EAJF may demand a Late Fee if any payment due under the Agreement is not received by EAJF on or before 1:00 p.m. Eastern Time on the fifth business day after the payment is due. The Late Fee consists of $1,000 per occurrence.

17.     On June 20, 2020, EAJF and Antzoulatos entered into an Amendment to the Agreement (“Amendment”) wherein EAJF loaned Antzoulatos an additional $100,000.00.

3

18.     Under Section 4.3 of the Amendment, the Agreement remains in full force and effect except as to any terms specifically amended within the Amendment.

19.     The Original Loan of $500,000, plus the additional $100,000 EAJF loaned to Antzoulatos under the Amendment, plus all capitalized interest and fees, collectively make up the "Loan."

20.     On June 24, 2020, among other instruments, Antzoulatos executed a second promissory note ("Second Note") for the new $711,527.79 principal balance, additional accrued interest, and additional fees to evidence his indebtedness to EAJF.

21.     The Second Note supersedes the Original Note.

22.     Under Section 10.1 of the Agreement, including as amended by the Amendment, Antzoulatos granted EAJF "valid and perfected first priority Liens" on his real property, which includes the Property, as collateral for the Second Note and new Loan amount.

23.     Antzoulatos owned the Property since October 2, 2018, and owned the Property at the time of the Amendment.

24.     Under Section 10.1 (entitled "Collateral") of the Agreement, as amended by the Amendment, Antzoulatos agreed to deliver a mortgage, after a default of the Agreement's terms and at EAJF's request, for his real property, which includes the Property.

25.     The "Maturity Date" for the Agreement, as amended by the Amendment Section 1.16, was the earlier of either September 26, 2021, or the date that the Loan was accelerated under the terms of the Agreement and Amendment.

26.     To accelerate the Loan under Agreement Section 8.2, as defined under Maturity Date in the Amendment, EAJF may send written notice to Antzoulatos upon an "Event of Default" by Antzoulatos.

4

27.     Event of Default is defined in the Agreement, as amended by the Amendment.

28.     As set forth below, Antzoulatos committed numerous Events of Default and EAJF accelerated the Loan.

29.     Under Section 8.2 of the Agreement, when EAJF accelerated the Loan, Antzoulatos owed EAJF payment of the entire principal balance, accrued interest, and fees immediately on the date of the acceleration notice.

30.     Under Section 8.1 of the Agreement, it is an Event of Default for Antzoulatos to not make a payment when due.

31.     Under Section 7.1 of the Agreement, a covenant exists that required Antzoulatos to maintain his law license and his legal practice.

32.     Under Section 7.3 of the Agreement, a covenant exists that required Antzoulatos to provide various reports to EAJF, including tax returns, financial status of the law firm, audits, threatened or pending litigation, and threatened or pending disciplinary actions.

33.     Under Section 7.4 of the Agreement, a covenant exists that required Antzoulatos to permit EAJF to inspect his properties and financial records.

34.     Under Section 7.5 of the Agreement, a covenant exists that prevented Antzoulatos from incurring, creating, or assuming debt to a third party other than EAJF of more than $50,000.

35.     Under Section 7.6 of the Agreement, a covenant exists that prevented Antzoulatos from incurring a lien of any kind on any of his property.

36.     Under Section 8.1 of the Agreement, it is an Event of Default for Antzoulatos to fail to observe or perform any one of the covenants listed above or listed in the Agreement.

37.     Upon an Event of Default, Section 2.6 of the Agreement provides an additional interest rate of 5.00% per annum on the principal and all other amounts owed ("Default Interest").

This Default Interest is in addition to the 22.00% standard interest.

38.     EAJF learned after the Amendment and the second loan, that on January 14, 2020, prior to the Amendment and the Note, the New York State Bar Grievance Committee had commenced a grievance action against Antzoulatos under which he risked losing his law license for various instances of alleged attorney misconduct, including fraud on clients.

39.     If EAJF had known about the grievance action pending against Antzoulatos, EAJF would not have entered into the June 2020 Amendment and Note, nor would EAJF have advanced another $100,000.00 to Antzoulatos, nor would EAJF have permitted Antzoulatos to capitalize his outstanding obligations into the Loan rather than paying them as due. Antzoulatos failed to inform EAJF of his ongoing grievance action when he requested the additional $100,000.00 from EAJF.

40.     On September 16, 2020, the New York State Bar Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, by way of an order from the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, suspended Antzoulatos' law license and prohibited him from practicing law in the State of New York ("Suspension Order"). The order in 2020 NY Slip Op 71945(U) outlines Antzoulatos' suspension in Case No. 2020-00446, *Matter of Antzoulatos, Alex G*. EAJF did not learn of this until later, and did not learn of this from Antzoulatos.

41.     Though required, Antzoulatos failed to notify EAJF of the suspension of his law license.

42.     At the time of the Amendment and Note, though required, Antzoulatos failed to notify EAJF of the pending New York Bar grievance claims against him.

43.     At the time of the Suspension Order, though required, Antzoulatos failed to notify EAJF of the pending New York Bar grievance claims against him.

6

44.     On September 26, 2020, the second yearly anniversary of the Loan, the accrued interest to date of $142,522.82 was added to the existing principal balance of $711,527.79 for a total new capitalized principal balance of $854,050.61.

45.     Under the terms of the Agreement, EAJF sent Antzoulatos an invoice for the yearly anniversary Servicing Fee of $8,540.51 ( "Invoice"). The payment was due October 2, 2020.

46.     Antzoulatos failed to pay the $8,540.51  Invoice.

47.     On or about January 1, 2020, prior to the Amendment and the Second Note, Alve Realty LLC, a landlord, commenced a proceeding against Antzoulatos in the Civil Court of the City of New York, County of Queens ("Eviction Litigation").

48.     The Eviction Litigation sought to evict Antzoulatos' law firm from its leased office space located at 37-14 30th Street, 2nd Floor, Long Island, New York, 11101 for failure to pay rent. Antzoulatos represented himself in the Eviction Litigation and entered a stipulation with Alve Realty LLC, the landlord, on January 28, 2020, to pay $60,000 in back rent and vacate the leased office space. Antzoulatos failed to vacate the space as stipulated, and the Civil Court of the City of New York, County of Queens, signed a judgment in favor of Alve Realty LLC and against Antzoulatos on December 11, 2020.

49.     Antzoulatos never informed EAJF of the Eviction Litigation. Antzoulatos did not inform EAJF that his law firm was evicted from its leased office space located at 37-14 30th Street, 2nd Floor, Long Island, New York, 11101.

50.     If EAJF had known about the Eviction Litigation pending against Antzoulatos, EAJF would not have entered into the June 2020 Amendment and Second Note, nor would EAJF have advanced another $100,000 to Antzoulatos or permitted him to capitalize the amounts then due.

7

51.     Antzoulatos waited months to inform EAJF of a change of address for his law firm.

52.     On or about May 28, 2020, before the Amendment and the Second Note, a party seeking $370,000 in damages filed a lawsuit against Antzoulatos in New York state court ("Kays Lawsuit"), Index No. 706063/2020, *James Kays, et. al. v. Alex G. Antzoulatos*; Supreme Court of the State of New York, County of Queens.

53.     In the Kays Lawsuit, two of Antzoulatos' former clients sued Antzoulatos for $370,000.00. According to the Kays Lawsuit court documents, Antzoulatos was indebted to his clients for $370,000.00 and owed them payment no later than January 1, 2020, yet Antzoulatos failed to pay. The Kays Lawsuit plaintiffs further alleged that Antzoulatos offered the clients the Property as security for the money owed. It was also alleged Antzoulatos committed fraud against the Kays, after Antzoulatos knowingly sold fake gold coins to the Kays purporting the coins to be from the legendary British frigate HMS Hussar, which sank in 1780.

54.     The Kays lawsuit was a motion for summary judgment in lieu of complaint. If EAJF had known about the Kays Lawsuit pending against Antzoulatos, EAJF would not have entered into the June 2020 Amendment and Second Note, nor would EAJF have advanced another $100,000.00 to Antzoulatos.

55.     Antzoulatos never informed EAJF of the Kays Lawsuit.

56.     Antzoulatos never informed EAJF of the debts he incurred that are at issue in the Kays Lawsuit.

57.     Antzoulatos never informed EAJF that he offered a lien on the Property to a person or entity other than EAJF as alleged in the Kays Lawsuit.

58.     On August 20, 2020, a suit was filed against Antzoulatos by Antzoulatos' former administrative assistants for his failure to pay their wages. Again, when Antzoulatos borrowed

8

from EAJF, including at the end of June 2020, Antzoulatos was required to use, and represented that he would use, the funds to pay "for law firm purposes." In direct violation of his representations, Antzoulatos did not use the borrowed funds to pay law office rent or his staff.

59.     Despite proper service perfected on Antzoulatos, Antzoulatos failed to answer the suit by his former administrative assistants, which prompted a default judgment against Antzoulatos.

60.     On or about October 26, 2020, the Court rendered default judgement against Antzoulatos with damages consisting of over $114,510.80 in damages not including prejudgment and post-judgment interest rate owed to Antzoulatos' former administrative assistants.

61.     Antzoulatos never informed EAJF of the lawsuit filed by his former administrative assistants.

62.     Antzoulatos never informed EAJF of the alleged debts he incurred that are at issue in the lawsuits filed by his former administrative assistants. If Antzoulatos had disclosed to EAJF that he was not using the Loan proceeds to pay his employees, the Loan would not have been made and Antzoulatos would not have been permitted to capitalize the amounts he owed under the Loan.

63.     EAJF learned of the suspension of Antzoulatos' law license in early November 2020.

64.     Antzoulatos agreed to discuss the New York State Bar Grievances with EAJF on November 13, 2020, but Antzoulatos did not attend the scheduled call.

65.     Antzoulatos agreed, during a conference call in November 2020, to accept notices under the Agreement and Amendment by email at alexlawyer512@gmail.com.

66.     On December 4, 2020, EAJF sent correspondence to Antzoulatos via First Class Mail and electronic mail, notifying him of his various Events of Default under the Agreement and

9

Amendment, and EAJF gave notice of acceleration of the Loan ("Acceleration Letter").

67.     The Acceleration Letter outlined Antzoulatos' defaults under the Agreement, which Events of Default included: (1) his failure to pay the $8,540.51 Servicing Fee invoiced on September 25, 2020; (2) his failure to maintain his New York law license; (3) his failure to inform EAJF of the Suspension Order; (4) his failure to inform EAJF of the Eviction Litigation against his law firm; (5) his failure to inform EAJF that his law firm vacated its leased office space due to the Eviction Litigation; (6) his failure to inform EAJF of the Kays Litigation; (7) his failure to permit EAJF to inspect his financial records and other required reporting; (8) his failure to inform EAJF of existing disciplinary actions; and (9) the incurrence of one or more liens on the Property, which is collateral for the Loan and Note.

68.     Due to the acceleration of the Maturity Date, Antzoulatos owed EAJF, as of December 4, 2020, the principal of the Loan, along with interest, costs, and fees.

69.     Antzoulatos never made a payment on the accelerated Loan.

70.     On or about December 29, 2020, per Antzoulatos' request, counsel for EAJF drafted a letter in response to the third charge brought against Antzoulatos by the Grievance Committee for the Second, Eleventh and Thirteenth Judicial Districts against Alex G. Antzoulatos regarding allegations related to Antzoulatos' alleged improper fee sharing agreement with a nonlawyer, EAJF. However, to Plaintiff's knowledge, this defense was never raised by Antzoulatos in his Grievance Committee hearing.

71.     On January 14, 2021, EAJF sent correspondence to Antzoulatos via First Class Mail and electronic mail to alexlawyer512@gmail.com notifying him that, due to his defaults under the Agreement and Amendment, EAJF requested that Antzoulatos execute and deliver the Mortgage Agreement on the Property ("Mortgage Letter").

10

72.     The Mortgage Letter included an attached "Mortgage Agreement" already executed by EAJF for Antzoulatos' Property.

73.     The Mortgage Letter constituted written notice to Antzoulatos of EAJF's request for a mortgage on its collateral under the Agreement.

74.     On or about February 8, 2021, EAJF submitted to JAMS its Demand for Arbitration in accordance with the Loan Agreement.

75.     On March 29, 2021, via email from alexlawyer512@gmail.com, Antzoulatos advised EAJF that he received and sent out the Mortgage Agreement, noting "In regards to JAMS [arbitration] I am not opposing your file. I did send out the mortgage document dated January 14, 2021." That representation was either false or such mail was never delivered.

76.     On April 1, 2021, via email from alexlawyers512@gmail.com, Antzoulatos advised EAJF that he signed, had notarized, and filed the Mortgage Agreement that EAJF sent to him in the Mortgage Letter.

77.     On April 5, 2021, EAJF sent an email to Antzoulatos at alexlawyer512@gmail.com alerting him that the Mortgage Agreement was not recorded.

78.     On April 5, 2021, Antzoulatos responded, via email from alexlawyer512@gmail.com, stating that he signed and notarized the Mortgage Agreement, attached it to a cover letter, and "personally dropped it off" at "the title company in New York City" sometime during the week of January 18, 2021.

79.     In a separate email from alexlawyer512@gmail.com on April 5, 2021, Antzoulatos stated "I will execute [the Mortgage Agreement] again" and directed EAJF's counsel, Ross Spence, to send Antzoulatos another copy of the Mortgage Agreement.

80.     In another separate email from alexlawyer512@gmail.com on April 5, 2021,

11

Antzoulatos stated that he needed a new copy of the Mortgage Agreement because he "[d]ropped it off at title company [b]ack in January 2021."

81.    On April 5, 2021, EAJF's counsel, as requested by Antzoulatos, emailed Antzoulatos another copy of the Mortgage Agreement to alexlawyer512@gmail.com. EAJF's counsel also offered to overnight courier a copy to Antzoulatos to assist him.

82.    On April 9, 2021, EAJF's counsel again emailed another copy of the Mortgage Agreement to Antzoulatos at alexlawyer512@gmail.com.

83.    On April 16, 2021, EAJF sent an email to Antzoulatos at alexlawyer512@gmail.com advising him that the title company does not have the Mortgage Agreement.

84.    Section 11.1 of the Agreement, as amended by the Amendment, outlines the notices required under the Agreement. Notice may be given by certain mail or by electronic mail.

85.    Arbitration with JAMS commenced on September 7, 2021, and concluded that same day. EAJF appeared with representatives, but Antzoulatos did not appear.

86.    On September 28, 2021, the JAMS Arbitrators made a ruling against Antzoulatos. The arbitrators found, among others, the following:

- Antzoulatos failed to maintain his New York law license;
- Antzoulatos failed to inform EAJF of the Suspension Order;
- Antzoulatos failed to inform EAJF of the Eviction Litigation against his law firm;
- Antzoulatos failed to inform EAJF that his law firm vacated its leased office space due to the Eviction Litigation;
- Antzoulatos failed to inform EAJF of the Kays Litigation;
- Antzoulatos failed to permit EAJF to inspect his financial records and other required reporting;
- Antzoulatos failed to inform EAJF of existing disciplinary actions; and
- Antzoulatos failed to inform EAJF regarding one or more liens on the Property, which is collateral for the Loan and Note.

87.    On or about December 2021, Antzoulatos appeared with the signed Mortgage

Agreement dated October 19, 2021, but effective as of January 14, 2021. The Mortgage Agreement was recorded with the City Register of the City of New York On February 3, 2022.

88.     On February 16, 2022, the Arbitration award against Antzoulatos was confirmed by the Delaware Chancery Court.

89.     Subsequently, EAJF discovered Antzoulatos had transferred the Property to another individual, during the pendency of the suit and after EAJF's Mortgage was recorded in the real property records, which was a direct violation of the Agreement, Amendment, Second Note, and Mortgage Agreement. Antzoulatos further confirmed during the Meeting of the Creditors that he knowingly transferred the title to the Property to another individual and commented that the Property is no longer in his name.

90.     Antzoulatos appears to be arguing that his transfer of the Mortgaged Property to a third party, in direct breach of the Mortgage Agreement and the Amendment somehow shields the Property from EAJF.

91.     EAJF has also discovered that the Property has allegedly been rented out in whole or in part at various times during Antzoulatos' ownership, but no rents were ever shared with EAJF.

92.     Antzoulatos also represented in writing to EAJF at various times that he was actively representing clients on a listed docket of cases, but the Grievance Committee found that Antzoulatos was not representing those clients. Antzoulatos presumably transferred those cases to another lawyer, but he never accounted to EAJF for any transfer fees or retained interests in those cases.

## COUNT I

### (Denial of Discharge Pursuant to Section 523(a)(2), (4), and (6))

93.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 92 of this Complaint as if set forth at length herein.

94.     11 U.S.C. § 523(a)(2) provides in relevant part that a

> discharge under section 727, 1141, 1228(a), 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt…for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–(A) false pretenses, a false representation, or actual fraud…(B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

95.     All of the debts owed to Plaintiff asserted herein are non-dischargeable as they are debts for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, false representations, or actual fraud within the meaning of section 523(a)(2)(A) and debts obtained through the use of statements in writing that were materially false respecting the Antzoulatos' financial condition on which Plaintiff reasonably relied and that Antzoulatos caused to be made and published with intent to deceive.

96.     11 U.S.C. § 523(a)(4) provides in relevant part that a "discharge under section 727, 1141, 1228(a), 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt…for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

97.     Antzoulatos fraudulently appropriated EAJF's loans without ever intending to use those loans to pay "for law firm purposes" or to pay back the loans.

98.     Instead, Antzoulatos used the Loan proceeds for personal use, and appropriated

14

additional loans without disclosing pertinent information requested by Plaintiff and required by the Loan Agreement, such as his license suspension and numerous lawsuits filed against him for fraud and debts.

99.     Antzoulatos further committed fraud by transferring the Property to a third-party individual despite signing the Mortgage Agreement with EAJF.

100.    It is clear from the presented facts and evidence that Antzoulatos never intended to pay back the Loan, and is now attempting to discharge the debt which he fraudulently incurred.

WHEREFORE, Plaintiff respectfully requests the Court's judgment that the Debtor's debts to Plaintiff are non-dischargeable under section 523(a)(2), (4), and (6) of the Bankruptcy Code, and that the Court grant Plaintiff such other and further relief as the Court may deem just and proper.

Dated: September 25, 2023
      New York, New York

Respectfully Submitted,

By: */s/ Phillip S. Pavlick*
    Phillip S. Pavlick, Esq.
    McCARTER & ENGLISH, LLP
    Worldwide Plaza
    825 Eighth Avenue, 31st Floor
    New York, New York 10019
    Telephone: (212) 609-6800
    -and-
    100 Mulberry Street
    Four Gateway Center
    Newark, New Jersey 07102
    Telephone: (973) 622-4444
    Facsimile: (973) 624-7070
    ppavlick@mccarter.com

    -and-

    Ross Spence, Esq. (admitted *pro hac vice*)
    SPENCE, DESENBERG & LEE, PLLC
    1770 St. James Place, Suite 625
    Houston, Texas 77056
    Telephone: (713) 275-8440
    Facsimile: (713) 275-8445
    ross@sdllaw.com

    *Counsel for Equal Access Justice Fund LP*